# UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CELINA ALEXANDRA GARCIA,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER DENYING<br>DEFENDANT'S MOTION<br>FOR COMPASSIONATE RELEASE<br><br>Case No. 2:21-cr-236-HCN-DBP-16<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Defendant Celina Alexandra Garcia, who is currently serving a sentence in federal prison, moves the court for compassionate release under 18 U.S.C. § 3582(c)(1)(A). *See* Dkt. No. 1038. The court denies her motion.

## I.

Ms. Garcia is serving a 96-month prison sentence at FCI Waseca. The court imposed this sentence in May 2022, after Ms. Garcia pleaded guilty to a charge arising from her involvement in a sprawling drug conspiracy. *See* Dkt. No. 519.

With "a few narrow exceptions," *Freeman v. United States*, 564 U.S. 522, 526 (2011), a district court generally may not "modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c). "One such exception is contained in § 3582(c)(1)." *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021). That provision permits a court to "reduce [a] term of imprisonment" upon a defendant's motion if "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A). Such motions are colloquially known as motions for "compassionate release." *E.g.*, *Concepcion v. United States*, 597 U.S. 481, 495 (2022). A defendant may move for compassionate release only if she has previously asked the Bureau of

Prisons "to bring a motion on the defendant's behalf" and either (1) she has "fully exhausted all administrative rights to appeal" the Bureau's failure to do so, or (2) there has been a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A).

On January 29, 2023, Ms. Garcia sent her first letter to the warden of FCI Waseca requesting that he seek compassionate release on her behalf. *See* Dkt. No. 1078-2 at 2. Fifteen days later, the warden responded with a letter denying her request. *See* Dkt. No. 1121-1 at 1. That letter included the following language: "If you are not satisfied with this response to your request, you may commence an appeal of this decision via the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response." *Id.*

Ms. Garcia did not file an administrative appeal. She did, however, send a second letter to the warden on June 19, 2023, requesting once again that he seek compassionate release on her behalf, this time on somewhat different grounds. *See* Dkt. No. 1078-2 at 4–8. The warden denied this second request 29 days later. *See* Dkt. No. 1121-1 at 2. His denial letter again outlined the Bureau of Prisons' internal administrative appeals process. *See id.*

Ms. Garcia did not file an administrative appeal of this second denial either. Instead, she moved the court for compassionate release the following day. *See* Dkt. No. 1038. The United States timely opposed Ms. Garcia's motion, arguing, among other things, that the motion must be denied because Ms. Garcia failed to "fully exhaust" her administrative remedies. Dkt. No. 1078 at 6–7.

2

## II.

When first enacted, 18 U.S.C. § 3582(c)(1)(A) permitted a court to reduce a defendant's term of imprisonment only "upon motion of the Director of the Bureau of Prisons." Sentencing Reform Act of 1984, Pub. L. 98-473, Title II, Chap. II, § 212, 98 Stat. 1837, 1998 (Oct. 12, 1984). As part of the First Step Act of 2018, Congress amended the statute to allow defendants themselves to move for compassionate release. *See* Pub. L. 115-391, Title VI, § 603(b)(1), 132 Stat. 5194, 5239 (Dec. 21, 2018). The amended statute, however, provides that a court may grant compassionate relief "upon motion of the defendant" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

The parties agree that Ms. Garcia has not "fully exhausted all administrative rights to appeal" the warden's denial of either of her requests. *See* Dkt. No. 1078 at 7; Dkt. No. 1121 at 3–5. Ms. Garcia argues, however, that full administrative exhaustion was not required here. Her argument appears to be that there was a "lapse of 30 days" from the receipt of her requests by the warden because more than 30 days *passed* between when the warden received her requests and when she filed her motion, even though the warden *denied* each of her requests within 30 days. *See* Dkt. No. 1121 at 3.[1] The court disagrees.

---

[1] Although the court charitably construes Ms. Garcia's argument in this manner, her position may instead (or in the alternative) be that full administrative exhaustion is not required here because, although the warden denied each of her requests within 30 days of receiving it, more than 30 days have passed since that *denial*. *See* Dkt. No. 1121 at 4–5. That argument is impossible to square with the text of the statute, which directs the court to determine whether there has been a "lapse of 30 days from the *receipt* of such a request by the warden," § 3582(c)(1)(A), not whether there has been a "lapse of 30 days from the *denial* of such a request by the warden."

3

## A.

The Tenth Circuit has repeatedly indicated that a "lapse of 30 days" occurs under the statute only when 30 days pass *without action* by the warden on a prisoner's compassionate-release request. In *United States v. Wesley*, for instance, the Tenth Circuit construed Section 3582(c)(1)(A) to "permit prisoners to bring motions on their own behalf if they ask the BOP to bring a motion *and it does not respond* within thirty days." 60 F.4th 1277, 1282 (10th Cir. 2023) (emphasis added). Likewise, in *United States v. Maumau*, the Tenth Circuit explained that—absent administrative exhaustion—this statute permits "a defendant to directly file a motion for compassionate release with the district court" only upon "the passage of 30 days from the defendant's *unanswered* request to the warden for such relief." 993 F.3d at 830 (emphasis added).

### 1.

The Tenth Circuit's reading of the phrase "lapse of 30 days" is strongly supported by Section 3582(c)(1)(A)'s structure. At the outset, the court notes that Ms. Garcia's contrary reading of this phrase would render the word "lapse" superfluous, as illustrated by the following redline:

> A court may grant compassionate relief "upon motion by a defendant" only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or ~~the lapse of~~ 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." (Editing added).

As a matter of simple grammar, the quoted language means exactly the same thing with or without the illustrated deletion. It is surely odd to read the word "lapse" in a way that makes that word redundant.

But this is hardly the biggest problem with Ms. Garcia's position. Under her reading, whenever administrative exhaustion takes longer than 30 days—even if the Bureau of Prisons

4

has promptly denied a prisoner's request and is working diligently on her appeal—the prisoner may proceed directly to district court. Such a reading would effectively nullify the statute's administrative-exhaustion requirement, because the full exhaustion of internal BOP appeals cannot reasonably be expected ever to take less than 30 days. After all, full administrative exhaustion of a compassionate-release request within the Bureau is a lengthy process comprising multiple steps. *See United States v. Smith*, 460 F. Supp. 3d 783, 795–96 (E.D. Ark. 2020). Indeed, the Bureau's regulations contemplate that these steps may properly take up to 210 days. *See* 28 C.F.R. §§ 542.15 & 542.18. Nor is this timeline surprising, given the vast number of requests that the Bureau no doubt receives each year.

      As a practical matter, then, Ms. Garcia's reading of the statute would render meaningless all of words marked in redline below:

> A court may grant compassionate relief "upon motion by a defendant" only "after ~~the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of~~ 30 days from the receipt of such a request by the warden of the defendant's facility~~, whichever is earlier~~." (Editing added).

Her reading thus violates the "cardinal principle of statutory construction that," if possible, a statute generally should be construed so that "no clause, sentence, or word" becomes "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (cleaned up).

      The Tenth Circuit's reading of the phrase "lapse of 30 days," by contrast, complies with this "cardinal principle." It gives grammatical and practical meaning to all of the statutory language.

      The Tenth Circuit's reading also comports with the "broader structure" of the statutory framework, *King v. Burwell*, 576 U.S. 473, 492 (2015), which clearly contemplates that administrative exhaustion under Section 3582(c)(1)(A) should be the rule, not the exception. For instance, Section 3582(d)(2)(C)(iii) requires BOP facilities to "regularly and visibly post," and to

"make available to prisoners upon demand, notice of" their right to file compassionate-release motions "after all administrative rights to appeal within the Bureau have been exhausted." Likewise, Section 3582(d)(3)(K) requires the Bureau to keep records of "the number of motions filed by defendants with the court after all administrative rights to appeal a denial of a sentence reduction had been exhausted." These related statutory provisions leave no doubt that Section 3582(c)(1)(A) was not intended to permit prisoners to short-circuit administrative remedies so long as prison wardens promptly address requests for compassionate release in the first instance.

### 2.

The Tenth Circuit's reading also comports with the plain language of the statute. When used as a noun, "lapse" sometimes expressly denotes—and no doubt more frequently connotes—failure, default, or expiration. *See United States v. Weidenhamer*, No. CR-16-01072, 2019 WL 6050264, at *3 (D. Ariz. Nov. 8, 2019). One common meaning of this word, for example, is "[a] usually minor or temporary failure" (or "a slip"), such as "a lapse of memory" or "a lapse in judgment." *Lapse*, American Heritage Dictionary (5th ed. 2022); *see also Lapse*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("a slight error typically due to forgetfulness or inattentiveness"); *Lapse*, New Oxford American Dictionary (3d ed. 2010) ("a temporary failure of concentration, memory, or judgment"). Likewise, it is common in general usage to refer to the "lapse" of "a right, privilege, or agreement" that "become[s] invalid" or "expire[s]" because "it is not used, claimed, or renewed." *Lapse*, New Oxford American Dictionary (3d ed. 2010). For example, someone might say that his "membership to the gym has lapsed." *Id*.

Indeed, in the legal context specifically, "lapse" is frequently used to refer to a default or expiration, often as a result of inaction. *Black's Law Dictionary*, for example, defines a "lapse" as "[t]he termination of a right or privilege because of a failure to exercise it within some time

6

limit or because a contingency has occurred or not occurred." *Lapse*, Black's Law Dictionary (11th ed. 2019); *see also Lapse*, New Oxford American Dictionary (3d ed. 2010) ("the termination of a right or privilege through disuse or failure to follow appropriate procedures"); *Lapse*, American Heritage Dictionary (5th ed. 2022) ("The termination of a right or privilege as a result of expiration, disuse, or impossibility.").

Similarly, when used as a verb, "lapse" often connotes inaction, or failure to take proper action. For example, a sports team that fails to practice (or to practice well) may "lapse" into "bad habits" or "mediocrity." *Lapse*, American Heritage Dictionary (5th ed. 2022). Likewise, a person may "lapse" from his diet if he fails to actively maintain it. *See Lapse*, New Oxford American Dictionary (3d ed. 2010) ("(of a state or activity) fail to be maintained; come to an end," using as an example "if your diet has lapsed it's time you revived it"). Or one may "lapse" from the faith by gradually slipping away from the church through inactivity. *See Lapse*, Oxford English Dictionary (online) ("To fall away by slow degrees; to pass or sink gradually through absence of effort or sustaining influence"; using as an example, "Many lapsed and apostatized from the faith"); *cf. Lapse*, New Oxford American Dictionary (3d ed. 2010) ("(of an adherent to a particular religion or doctrine) cease to follow the rules and practices of that religion or doctrine").

Relatedly, the verb "lapse" may suggest that something passes smoothly and without interruption. *Cf. Lapse*, American Heritage Dictionary (5th ed. 2022) ("To pass gradually or smoothly; slip."). One might say, for instance, that a stream "lapses" across the countryside if it flows gently, without interruption by a dam or rapids. *See Lapse*, Oxford English Dictionary (online) ("Of a stream: To glide, flow."). And, if someone says that time has "lapsed," she may well mean that it has passed by unremarkably, without interruption. *See Lapse*, Merriam-

7

Webster's Collegiate Dictionary (11th ed. 2003) ("To glide along," using as an example "time lapses"); *Lapse*, Oxford English Dictionary (online) ("Of time: To glide past, pass away.").

Given the close association that the word "lapse" has with failure, default, expiration, inaction, and the lack of interruption, the court has little doubt that, as used in Section 3582(c)(1)(A), "the *lapse* of 30 days" can reasonably and naturally be read to mean "the passage of 30 days without action by the warden."

### B.

To be sure, some federal courts of appeals have embraced Ms. Garcia's reading of Section 3582(c)(1)(A), concluding that once the warden receives a prisoner's compassionate-release request, a "lapse of 30 days" occurs whenever 30 days have passed, *regardless* of whether the warden has acted on her request during that period. The Fourth and Fifth Circuits, for instance, have both held that "a prisoner may wait 30 days after filing his request and—whether the BOP has ruled on the request or not—he is free to file a motion in the district court." *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *accord United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021).

But this reading is flatly inconsistent with the Tenth Circuit's decisions in *Maumau* and *Wesley*, in each of which that court explained that, for purposes of the statute, a "lapse" occurs only if 30 days pass *without action* by the warden. See *Maumau*, 993 F.3d at 830; *Wesley*, 60 F.4th at 1282. This court must of course follow the Tenth Circuit's guidance over that of its "sister circuits." *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990).

Even absent the Tenth Circuit's guidance, moreover, this court would read the statute the same way. To be sure, the Fourth and Fifth Circuits have asserted that their reading is *compelled* by the statute's plain meaning. See *Muhammad*, 16 F.4th at 130 (describing its reading as

"unambiguously clear" from "the statute's plain text"); *Garrett*, 15 F.4th at 338 (declaring that the contrary "understanding is at war with the statute's text"). This court disagrees.

While the Fourth and Fifth Circuits' reading of "lapse" is certainly "linguistically *permissible*," *Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 133 (4th Cir. 2023) (emphasis added), it is by no means linguistically *required*. As discussed, the word "lapse" sometimes expressly denotes—and still more frequently connotes—failure, default, expiration, inaction, or lack of interruption. The plain meaning of "lapse" simply does not support these Circuits' *ipse dixit* that this word *must* mean "the *mere* passage of time" and *cannot* mean "the *uninterrupted* passage of time" or "the passage of time *without action by the warden*."

Further, whatever merit the first of these readings might have when considered "in isolation," it is usually wrong to pluck words from a statute and to construe them "in a vacuum." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Yet the reading adopted by the Fourth and Fifth Circuits ignores the "legal context" in which "lapse" is used here. *Pulsifer v. United States*, 601 U.S. 124, 141 (2024). As explained, in that context, reading "lapse" to mean "the mere passage of time" would not only render the word itself superfluous, it would also effectively write the requirement of full administrative exhaustion out of the statute.

To be sure, statutes cannot properly be read in a way that lacks a "colorable textual basis." *West Virginia v. EPA*, 597 U.S. 697, 722 (2022). But, within the bounds of what is "grammatically" and linguistically "permissible," *Pulsifer*, 601 U.S. at 132–33, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme," *Davis*, 489 U.S. at 809. Indeed, "the context and structure" of a statute may require a court to "depart from what would otherwise be the most natural reading of the pertinent statutory phrase." *King*, 576 U.S. at 497.

The structure of Section 3582(c)(1)(A) clearly rests on the understanding that a prisoner may avoid the requirement of full administrative exhaustion only if the warden *fails to act* on the prisoner's request to seek compassionate release on her behalf within 30 days of receiving it. That is precisely how the Tenth Circuit has read the statute. And as already explained, the Tenth Circuit's reading is at least linguistically permissible.

### C.

In this case, the warden of Ms. Garcia's facility acted on each of her compassionate-release requests within 30 days of receiving them: he denied the first request after fifteen days and the second after 29 days. Ms. Garcia was thus required to exhaust the Bureau's administrative appeals process.

This requirement is a "mandatory claim-processing rule," *United States v. Hemmelgarn*, 15 F.4th 1027, 1030–31 (10th Cir. 2021), which "must be enforced" when "properly invoked," *Hamer v. Neighborhood Housing Services*, 583 U.S. 17, 20 (2017); *see also United States v. Cortez-Diaz*, No. 21-3216, 2022 WL 1666953 at *1 n.2 (10th Cir. May 25, 2022) (unpublished). The Government has timely raised the exhaustion requirement here, and Ms. Garcia has indisputably failed to comply with it.

\*   \*   \*

For the foregoing reasons, Ms. Garcia's motion for compassionate release is **DENIED**.

**IT IS SO ORDERED**.

Dated this **2nd** day of August, 2024.

BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge